**UNITED STATES DISTRCIT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Jose Bernis Pina, | |
| *Petitioner*, | Case No. 26-1334 |
| v. | |
| Kenneth GENALO, in his official capacity as Field Office Director of New York, Immigration and Customs Enforcement; Unnamed Secretary, Department of Homeland Security; Pam BONDI, in her official capacity as Attorney General. | **PETITION FOR WRIT OF HABEAS CORPUS** |
| *Respondents*. | |

**INTRODUCTION**

On February 26, 2026, Petitioner Jose Bernis Pina, a resident of Brentwood, New York, was suddenly and unjustifiably arrested by Immigration and Customs Enforcement ("ICE") agents in a warrantless arrest. As Mr. Pina drove away from a Brentwood area Walmart, he was stopped and seized by ICE agents who, without any individualized consideration of Mr. Pina's circumstances or flight risk, detained him without a warrant. Because his detention is unlawful, he asks this Court to grant his petition and order his immediate release.

**PARTIES**

1. Petitioner Jose Bernis Pina is resident of Brentwood, New York. He was detained by Respondents on February 26, 2026, and remains in their custody.

2. Kenneth Genalo is named in his official capacity as the Field Office Director of the New

1

York Field Office for Immigration and Customs Enforcement ("ICE") within the United States Department of Homeland Security. The ICE New York Field Office is responsible for detentions in the greater New York City area, including Suffolk County. In this capacity, Mr. Francis is also responsible for the administration of immigration laws and the execution of detention and removal determinations and is a legal custodian of Petitioner. Respondent Francis's address is New York ICE Field Office Director, 26 Federal Plaza, 7th Floor, New York, New York 10278.

3. The Secretary of the Department of Homeland Security is named in their official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, they are responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Eastern District of New York; is legally responsible for pursuing any effort to remove the Petitioner; and as such is a legal custodian of the Petitioner. Respondent Secretary's address is U.S. Department of Homeland Security, 2707 Martin Luther King Jr Ave SE, Washington, District of Columbia 20528.

4. Respondent Pam Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review ("EOIR"), pursuant to 8 U.S.C. § 1103(g). She routinely transacts business in the Eastern District of New York and is legally responsible for administering Petitioner's removal and custody proceedings and for the standards used in those proceedings. As such, she is the custodian of Petitioner. Respondent Bondi's office

is located at the United States Department of Justice, 950 Pennsylvania Avenue,

N.W., Washington, DC 20530.

## JURISDICTION

5.    The federal district courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the lawfulness or constitutionality of their detention by ICE. *See, e.g., Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Petitioner was detained by Respondents on June 23, 2025.

6.    This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241 (habeas); 28 U.S.C. § 1331 (federal question); and Article I, § 9, cl. 2 of the United States Constitution. This Court has authority to grant declaratory and injunctive relief. 28 U.S.C. §§ 2201, 2202. The Court has additional remedial authority under the All Writs Act, 28 U.S.C. § 1651 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## VENUE

7.    Venue is appropriate in this district as Petitioner is currently detained at the Metropolitan Detention Facility in Brooklyn, New York.

## SPECIFIC FACTS ABOUT PETITIONER

8.    Mr. Pina is a 55-year-old Venezuelan resident of Brentwood, Long Island. Prior to his detention, he lived with his daughter and wife.

9.    Mr. Pina entered the United States on May 17, 2024, with a tourist visa. Upon arrival at the Miami International Airport, Mr. Pina was questioned by a Customs and Border Patrol agent, as is typical for foreign nationals seeking to enter the United States. He was authorized to enter to country and allowed to remain as a tourist for 180 days.

10.    On August 27, 2024, a little less than three months before his authorized period of stay

3

expired, Mr. Pina applied for asylum to the United States Citizenship and Immigration Services (USCIS). Mr. Pina fears returning to Venezuela because he was violently attacked by a government-supported paramilitary group due to his membership in the political opposition party *Accion Democratica* ("Democratic Action"). He was physically and verbally assaulted and threatened with imprisonment if he continued his political activity.

11. His asylum application has been pending ever since.

12. Upon information and belief, Mr. Pina does not have any criminal history.

13. At approximately 11 a.m. on Thursday, February 26, 2026, as Mr. Pina drove away from the Brentwood, New York area Walmart, he was pulled over by individuals who identified themselves as immigration officers. Upon information and belief, he was not provided with any explanation for why he was pulled over and only asked to provide his immigration papers, which he did. He provided his employment authorization document, valid through March 6, 2030. He was then handcuffed and placed in the back of the agents' van.

14. He was taken to 26 Federal Plaza in Manhattan, where he was held for approximately 24 hours. He was then transferred to Delaney Hall, an immigration detention facility in NJ. On Wednesday, March 4, 2026, at approximately 3 in the morning, he was transferred to MDC in Brooklyn, where he remains today.

15. Mr. Pina suffers from diabetes and high blood pressure and, upon information and belief, has not had regular access to his medication.

## **LEGAL FRAMEWORK**

16. Congress has authorized civil detention of noncitizens in removal proceedings for specific, non-punitive purposes. *See Jennings v. Rodriguez*, 138 S.Ct. 830, 833 (2018); *Zadvydas v.*

*Davis*, 533 U.S. 678, 690 (2001). For individuals who lawfully entered the United States and who are not subject to mandatory detention based on criminal history, detention is authorized by 8 U.S.C. 1226(a).

17.     Detention serves only two legitimate purposes: mitigating flight risk and preventing danger to the community. *See Zadvydas*, 533 U.S. at 690; *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020).

### *Detention without an Individualized Custody Determination Violates Due Process*

18.     Respondents' actions in detaining individuals like Petitioner without an individualized custody determination violates the right to due process. A person's liberty cannot be infringed upon without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690-91. The Second Circuit has held that the *Matthews v. Eldridge* balancing test is applicable to determine the adequacy of process in the context of civil immigration confinement. *Velasco Lopez*, 978 F.3d at 851 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). This test requires process sufficient to mitigate the risk of erroneous deprivation of a liberty interest.

19.     Here, because the federal government already made a custody determination regarding Mr. Pina upon his initial entry into the United States, his recent arrest and ongoing detention constitute a redetention and he is entitled to due process protections before being detained. When Mr. Pina arrived at Miami International Airport, a U.S. port of entry, he was an "applicant for admission" and remained subject to inspection and detention unless and until the reviewing Customs and Border Patrol officer authorized his admission. *See* 8 U.S.C. 1225. The officer did just that, concluding that Mr. Pina was admissible and allowing him to lawfully enter the United States. In other words, the CBP officer decided *not* to detain Mr. Pina or otherwise send him back from where he came.

5

### *8 U.S.C. § 1357 Prohibits Warrantless Arrests*
### *Absent Certain Conditions*

20. ICE officers' authority to conduct warrantless arrests is prescribed in 8 U.S.C. § 1357(a)(2). That statute requires that officers have "reason to believe" a person is in the U.S. in *violation* of laws *and* "is likely to escape before a warrant can be obtained for his arrest." That assessment must be individualized. To comport with the Fourth Amendment, this threshold is comparable to probable cause.

21. A noncitizen who, like Mr. Pina, enters the United States lawfully and files a bona fide application for asylum prior to the expiration of their authorized stay, is not in the U.S. in violation of the law. They may remain in the United States while their application is pending and are generally considered to be in a period of stay authorized by the Secretary of Homeland Security. *See* 8 U.S.C. 1182(a)(9)(iii)(II) (providing that no time in which a bona fide asylum application is pending shall be counted toward unlawful presence, absent unauthorized employment); *see also* USCIS I-589 Instructions for Application for Asylum and for Withholding of Removal ("While your case is pending, you will be permitted to remain in the United States.") *available at* https://www.uscis.gov/i-589 (last visited March 5, 2026).

22. In order to circumvent the requirements of 8 U.S.C. § 1357(a)(2), ICE now purports to issue administrative warrants in the field *after* it detains someone. Such warrants are unlawful, and do not alter the warrantless character of the detention, for at least two reasons. First, individuals subject to such warrants are invariably seized and detained, for Fourth Amendment purposes, well before the warrant is issued. *See Alberto C.M. v. Noem*, No. CV 26-380 (DWF/SGE), 2026 WL 184530, at *2 (D. Minn. Jan. 23, 2026) (granting habeas petition and ordering release where person was detained, under 1226, using a post-arrest

field warrant). Second, regulations prohibit the issuance of warrants *before* a Notice to Appear has issued. *See* 8 C.F.R. § 236.1 *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) ("when ICE arrested Gopie they had no authority to do so" because an NTA was not issued prior to his arrest) (collecting cases); *Arango v. Genalo*, No. 25-CV-6720 (RER), 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025) ("Because Arango was not served with a NTA under *after* her arrest, her due process rights were violated"). A subsequently issued warrant cannot justify a warrantless detention.

### *Direct Release or a Bail Hearing Held by This Court Are Appropriate Remedies*

23. The "equitable and flexible nature of habeas relief" affords district courts significant discretion over the appropriate remedies for violations of law and the Constitution. *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020); *see also Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus is, at its core, an equitable remedy").

24. Release is the customary remedy in habeas proceedings. *See* 28 U.S.C. § 2243 (the habeas should shall "dispose of the matter as law and justice require."); *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973) (finding "that the traditional function of the writ is to secure release from illegal custody"). The most appropriate remedy in a case like this, where Petitioner was previously living freely in the community and has been detained in violation of both the INA and due process, is release on recognizance without further conditions of release. *See Alfaro Herrera v. Baltazar*, No. 1:25-cv-04014, 2026 WL 91470, at *13 (D. Colo. Jan. 13, 2026) (given that petitioner had been previously released to the community and holding a bond hearing would prolong his unlawful detention, "[r]espondents' violations of Petitioner's rights are best remedied by ordering Petitioner's immediate release from immigration detention."); *Qasemi v. Francis*, No. 25-cv-10029, 2025 WL 3654098 at *14,

7

(S.D.N.Y. Dec. 17, 2025) (a bond hearing would not be an adequate remedy for the due process violations in petitioner's sudden arrest and detention); *Crespo Tacuri v. Genalo*, No. 25-cv-06896, 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026) (ordering release, finding that post-deprivation review cannot remedy the due process violation of detaining petitioner with no process or individualized assessment); *Moctezuma Macias v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (given that the government's repeated use of unlawful detention policies across the country, causing petitioners to "sit in jail waiting for a judicial decision," the court would order immediate release instead of causing additional delay through a bond hearing).

25. In the alternative, the habeas court can hold its own custody hearing and determine whether the government can prove by clear and convincing evidence that Petitioner must remain in custody, or whether he may be released on recognizance, an appropriate bond in light of his ability to pay, or supervised release. This is a more efficient and effective remedy than ordering an immigration judge to conduct a hearing, which may lead to additional enforcement proceedings and delays before the unlawful detention in this case is remedied. *See L.G.M. v. LaRocco*, 788 F.Supp.3d 401, 405-07 (E.D.N.Y. 2025) (ordering a bond hearing held by the habeas court, as this would be more efficient than delegating the task to the agency and ensure proper constitutional oversight); *Flores-Powell v. Chadbourne*, 677 F.Supp.2d 474-78 (D. Mass 2010) (granting petition and discussing at length habeas court's equitable power, which includes power to hold its own bail hearing); *see also Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *4 (M.D. Pa. Aug. 6, 2020) (finding that habeas court-ordered bond hearing was not individualized and did not comport with due process, and granting motion to enforce to hold the court's own bond

determination); *Ramirez v. Watkins*, No. 10-cv-126, 2010 WL 6269226, at \*19-20 (S.D. Tex. Nov. 3, 2010), *rep. and rec not reached,* (S.D. Tex. Dec. 8, 2010) (dismissing case as moot) (recommending the habeas court conduct its own bail inquiry, as it would be more efficient, ensure supervision over any compliance issues, and avoid further proceedings).

## CLAIMS FOR RELIEF

### COUNT ONE

**FIFTH AMENDMENT:**
**VIOLATION OF PROCEDURAL DUE PROCESS**

26. Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

27. Petitioner's detention violates the Due Process Clause of the Fifth Amendment, which forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. *See generally Reno v. Flores*, 507 U.S. 292 (1993); *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Kim*, 538 U.S. 510 (2003).

28. Because "[i]n this country liberty is the norm and detention 'is the carefully limited exception,'" *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (*quoting United States v. Salerno*, 481 U.S. 739, 755 (1987)), a reasoned, individualized determination is essential to ensure that detention is not an unnecessary—and thus erroneous—deprivation. Petitioner was not accorded sufficient process prior to his sudden detention by ICE. On information and belief, petitioner received neither notice nor an opportunity to be heard as to whether detention was warranted. *See Martinez*, 2026 WL 62019, at \*3 (finding a due-process violation where the "Government offers no justification for why" petitioner, a longtime U.S. resident, "was detained without an initial determination as to eligibility and

9

without a bond hearing"); *Cuy Comes*, 2025 WL 3206491, at *5 (ordering immediate release where "ICE summarily detained Cuy Comes without making an individualized determination as to his risk of flight or his danger to the community, let alone affording him notice or an opportunity to be heard.")

29.    Respondents further violated Petitioner's right to due process by violating the statute governing warrantless arrests. See Montilla v. I.N.S., 926 F.2d 162, 167 (2d Cir. 1991) (the requirement that agencies following their own regulations is "premised on fundamental notions of fair play underlying the concept of due process").Respondents further violated Petitioner's right to due process by violating the statute governing warrantless arrests. *See Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991) (the requirement that agencies following their own regulations is "premised on fundamental notions of fair play underlying the concept of due process").

## COUNT TWO

### FIFTH AMENDMENT:
### VIOLATION OF SUBSTANTIVE DUE PROCESS

30.    Immigration detention is civil, not punitive, and must always "bear[] a reasonable relation to the purpose for which the individual was committed." *Demore*, 538 U.S. at 527. (citing *Zadvydas*, 533 U.S. at 690). The Supreme Court has stated that the purpose or civil detention in this context is to "ensur[e] the appearance of aliens at future proceedings," *Zadvydas*, 533 U.S. at 690, and to prevent flight, *Demore*, 538 U.S. at 528

31.    Mr. Pina's detention serves none of the purposes of civil immigration detention. Respondents previously determined that he should be admitted into the United States and allowed to remain for his authorized period of stay subject to no restrictions. With no change in circumstances, Respondents arbitrarily detained Mr. Pina, subjecting him to jail-

10

like conditions and significant hardship. This abrupt deprivation of liberty violates substantive due process.

32. In addition, substantive due process "prevents the government from engaging in conduct that 'shocks the conscience.'" *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 356 (S.D.N.Y. 2019) (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). Petitioner has always complied with U.S. immigration law, entering the U.S. lawfully and complying with the laws governing applications for asylum. Petitioner was stopped and seized for no apparent reason other than his race and spoken language. Such a seizure shocks the conscience.

33. Respondents' actions violate Petitioner's right to due process.

## COUNT THREE

### VIOLATION OF THE FOURTH AMENDMENT AND 8 U.S.C. § 1357

34. Mr. Pina repeats and realleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

35. The Fourth Amendment applies to all seizures of the person." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Except at the border and its functional equivalents, the FourthAmendment prohibits Respondents from conducting a detentive stop to question a person without reasonable suspicion that a person is a noncitizen unlawfully in the United States. *Id.* at 884. The Government bears the burden of providing "specific and articulable facts" to support reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). The race of an individual cannot itself create reasonable suspicion, even for a temporary stop. *United States v. Brignoni-Ponce*, 422 U.S. 873, 887 (1975); *Noem v. Vasquez Perdomo*, No.

11

25A169, --- S.Ct, 2025 WL 2585637, at *3 (Sep. 8, 2025) (Kavanaugh, J., concurring). Officers lacked reasonable suspicion to approach and question Petitioner.

36. A search or seizure requires probable cause to believe a noncitizen "is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357 (a)(2). "Though 8 U.S.C. § 1357(a)(2) uses the phrase 'reason to believe; as the standard for executing warrantless civil immigration arrests, 'aliens in this country are sheltered by the Fourth Amendment in common with citizens,' and therefore, to avoid running afoul of the Fourth Amendment, this statutory phrase is 'considered the equivalent of probable cause.'" *Escobar Molina*, 2025 WL 3465518, at *13 (quoting *Au Yi Lau v. U.S. Immigr. & Naturalization Serv.*, 445 F.2d 217, 222-23 (D.C. Cir. 1971)); *see also United States v. Rodriguez*, 532 F.2d 834, 838 (2d Cir. 1976) (recognizing that arrests under 8 U.S.C. § 1357(a)(2) require probable cause); *English v. Sava*, 571 F. Supp. 1029, 1034 (S.D.N.Y. 1983) (construing 8 U.S.C. § 1357(a)(2) to require probable cause). Officers lacked probable cause to seize Petitioner.

37. Albeit briefly, Mr. Pina was in the custody of U.S. federal immigration authorities when he applied for admission upon arrival on May 17, 2024. The government exercised its discretion under the Immigration and Nationality Act to admit him into the United States. At the time of his arrest, he had been living at liberty pursuant to his admission and subsequently filed asylum application.

38. The government lacked reliable information of changed or exigent circumstances that would justify his arrest after federal immigration authorities had already allowed him to enter the United States lawfully. His re-arrest based solely on the fact that he is subject to removal proceedings is unreasonable and violates the Fourth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioners respectfully requests that this Court:

1.  Assume jurisdiction over this matter;

2.  Enjoin Petitioners' removal from the United States and the Eastern District of New York, Southern District of New York, or District of New Jersey pending adjudication of the instant petition;

3.  Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C.§ 2243;

4.  Declare that Petitioners' detention violates the Due Process Clause of the Fifth Amendment, the Fourth Amendment, and 8 USC § 1327;

5.  Grant a writ of habeas corpus ordering Respondents to immediately and unconditionally release Petitioners from custody, without GPS monitoring, and to return all property taken from him at the time of his detention;

6.  Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

7.  Grant such further relief as this Court deems just and proper.

DATED this 6th day of March 2026.

Rebecca Press, Esq
*Pro Bono Counsel for Petitioner*
Co-Counsel NYC
224 West 35th Street, Suite 500 #269
New York, NY 10001
rebecca@cocounsel.org

13